UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**ROBIN JEAN LYON CINI**,<br><br>Debtor. | Case No. **10-62715-11** |
| **ROBIN JEAN LYON CINI**,<br><br>Plaintiff.<br><br>-vs-<br><br>**VISCOMI & GERSH, PLLP**, **PETER F. CARROLL**, **BLUE CROSS AND BLUE SHIELD OF MONTANA, INC.**, **NIGEL CINI**, **ROBIN JEAN LYON CINI, PERSONAL REPRESENTATIVE OF THE ESTATE OF HANNA CINI**, and **ROBIN JEAN LYON CINI, CONSERVATOR FOR BAYDEN CINI**,<br><br>Defendants. | Adv No. **11-00007** |

**MEMORANDUM OF DECISION**

At Butte in said District this 19th day of December, 2012.

Pending in this adversary proceeding is the Motion for order of protection (Docket No. 134), filed on May 4, 2012, by Defendant Peter F. Carroll ("Carroll"), asserting attorney-client privilege against discovery requests made to Carroll by Plaintiff Robin Jean Lyon Cini ("Robin") regarding communications between Carroll and Robin's former spouse and co-Defendant Nigel Cini ("Nigel"), who Carroll represented in the marital dissolution case. Robin filed an objection

1

contending that the attorney-client relationship between Carroll and Nigel terminated and the privilege does not apply.  A hearing on Carroll's Motion was held at Missoula on May 10, 2012.  Carroll appeared pro se.  Robin was represented by attorney James H. Cossitt ("Cossitt") of Kalispell, Montana.  Nigel testified.  Robin's Ex. 1, 2, and 3, and Carroll's Ex. A and B were admitted into evidence.  At the conclusion of the hearing the Court took Carroll's Motion under advisement.  However, the actual communications between Nigel and Carroll which are the subject of the discovery requests and Carroll's Motion were not submitted to the Court for *in camera* review until after November 27, 2012.

Robin filed a voluntary Chapter 13 case on November 19, 2010.  She filed a complaint initiating this adversary proceeding on January 24, 2011, to determine the validity and priority of each of the Defendants' liens, avoidance of liens, and seeking contempt against Carroll and other Defendants.  Therefore, this Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b).

Robin and Nigel were married until dissolution of their marriage.  Nigel testified that he has used different attorneys, and that Carroll represented him during the dissolution.  Carroll ceased representing Nigel in the dissolution, and Nigel obtained other counsel.

Carroll sued Nigel for unpaid fees in Case No. DV-10-694B in the Montana Eleventh Judicial District Court, Flathead County.  On May 10, 2010, Nigel signed a confession of judgment against himself, Ex. 1, in favor of Carroll in DV-10-694B in the amount of $10,960.85 for unpaid legal services in the marital dissolution, parenting plan and property settlement.  Carroll attempted to collect his fees from Nigel and co-Defendant Michael Viscomi.  Ex. 3.

Nigel testified that, after entry of the confession of judgment against him, he continued to

return to Carroll's office asking for legal advice about his child parenting issues and other legal matters. Nigel testified that Carroll kept him sane and healthy and on the right track when he represented Nigel, that Nigel went to Carroll on a regular basis and requested legal advice on various matters and proceedings, and that Carroll provided him with legal advice and guidance given in confidence. There was no other reason Nigel went to Carroll's office.

Carroll asked Nigel whether he expected that their communications would remain confidential and Nigel answered yes, and that Nigel did not waive confidentiality. On cross examination by Cossitt, Nigel repeated that he considered his attorney-client relationship with Carroll uninterrupted. Carroll advised the Court that Carroll does not agree that he had a continuing attorney-client relationship with Nigel, but that Nigel believed that the attorney-client relationship remained.

The privilege log, Ex. B, itemizes 142 different e-mail communications between Nigel and Carroll beginning July 15, 2010, through April 18, 2012, many of which include attachments. The Court has reviewed all 142 e-mails. For the reasons set forth below, the Court finds and concludes that 35 of the 142 e-mails are not protected under the attorney-client privilege. Therefore, pursuant to Fed. R. Civ. P. 26(c) (applicable in adversary proceedings under F.R.B.P. 7026) the Court grants Carroll's Motion for order of protection with respect to all the emails listed in Ex. B except the 35 e-mails numbered 31, 47, 50, 57, 58, 71, 80, 82, 88, 91, 94, 95, 101, 106, 107, 112, 113, 114, 116, 119, 121, 123, 125, 126, 128, 129, 130, 131, 132, 133, 134, 135, 136, 141 and 142, with respect to which the Court denies Carroll's Motion. Carroll is ordered to deliver the 35 above-listed e-mails, and attachments thereto, to Cossitt in response to discovery. Because Carroll's Motion is granted and denied in part, under Rule 26(c)(3) and Rule

37(a)(5), the parties shall bear their own fees and expenses.

## DISCUSSION

Rule 26(c)(1) allows a party from whom discovery is sought to move for a protective order. Carroll moves for a protective order to forbid the disclosure or discovery of 142 e-mails on the ground of attorney-client privilege. Montana's attorney-client privilege is enacted at MONT. CODE ANN. § 26-1-803 which provides:

> (1) An attorney cannot, without the consent of the client, be examined as to any communication made by the client to the attorney or the advice given to the client in the course of professional employment.
>
> (2) A client cannot, except voluntarily, be examined as to any communication made by the client to the client's attorney or the advice given to the client by the attorney in the course of the attorney's professional employment.

*State v. Usrey*, 2009 MT 227, ¶ 39, 351 Mont. 341, 212 P.3d 279.

The existence of an attorney-client relationship in Montana generally is a question of fact. *Krutzfeldt Ranch, LLC, v. Pinnacle Bank*, 2012 MT 15, ¶ 14, 363 Mont. 366, 374, 272 P.3d 635, 642. The existence of an attorney-client relationship in Montana hinges on the client's reasonable belief that it exists. *Krutzfeldt Ranch, LLC, v. Pinnacle Bank*, 2012 MT 15, ¶ 24, 363 Mont. 366, 374, 272 P.3d 635, 642, citing *Pro–Hand Servs. Trust v. Monthei*, 2002 MT 134, ¶ 14, 310 Mont. 165, 49 P.3d 56. The burden of establishing a waiver of the attorney-client privilege is on the party seeking to overcome the privilege. *State v. Usrey*, 2009 MT 227, ¶ 39 – ¶ 44, 351 Mont. at 349; *State v. Statczar*, 228 Mont. 448, 452-53, 743 P.2d 606, 610 (1987).

The Montana Supreme Court discussed the attorney-client privilege at length in *Palmer by Diacon v. Farmers Insurance Exchange*, 261 Mont. 91, 106-07, 861 P.2d 895, 904-05 (1993):

> The fundamental purpose of the attorney-client privilege is to enable the

attorney to provide the best possible legal advice and encourage clients to act within the law. The privilege furthers this purpose by freeing clients from the consequences or the apprehension of disclosing confidential information, thus encouraging them to be open and forthright with their attorneys. *State ex rel. United States Fidelity and Guaranty Co. v. Second Judicial Dist. Ct.* (1989), 240 Mont. 5, 10, 783 P.2d 911, 914 ( USF & G ), (citing *Upjohn Co. v. United States* (1981), 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584, 591).

Another important policy behind the attorney-client privilege is to foster the attorney-client relationship by ensuring that attorneys are free to give accurate and candid advice without fear that the advice will later be used against the client. We approve of the Missouri Supreme Court's recognition of this policy, articulated as follows:

> As long as our society recognizes that advice as to matters relating to the law should be given by persons trained in the law-that is, by lawyers-anything that materially interferes with that relationship must be restricted or eliminated, and anything that fosters the success of that relationship must be retained and strengthened. The relationship and the continued existence of the giving of legal advice by persons accurately and effectively trained in the law is of greater societal value, it is submitted, than the admissibility of a piece of evidence in a particular lawsuit. Contrary to the implied assertions of the evidence authorities, the heavens will not fall if all relevant and competent evidence cannot be admitted.

*State ex rel. Great Am. Ins. Co. v. Smith* (Mo.1978), 574 S.W.2d 379, 383 (quoting Sedler & Simeone, Comment, Privileges in the Law of Evidence: The Realities of Attorney-Client Confidences, 24 Ohio St.L.J. 1, 3 (1963)).

The Court asked Cossitt why Robin needed the 142 e-mails between Nigel and Carroll. Cossitt replied that "there might be something in there" which relates to how Carroll and Nigel may defend against Robin in this adversary proceeding. The above-quoted excerpt from *Palmer* suggests that the value of trained legal advice can outweigh Robin's generalized need for discovery.

Carroll stated that he does not believe he had an attorney-client relationship with Nigel,

5

but that Nigel believed that the attorney-client relationship remained, and Nigel corroborated that in his testimony. No evidence exists in the record to the contrary, and as noted above the existence of an attorney-client relationship in Montana hinges on the client's reasonable belief that it exists. *Krutzfeldt Ranch*, 2012 MT 15 at ¶ 24, 363 Mont. at 374, 272 P.3d at 642.

The attorney-client privilege may extend to a former attorney. *Palmer*, 261 Mont. at 107-08, 861 P.2d at 905-06. Montana Rule of Professional Conduct 1.9(c)(2) provides: "A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter: . . . (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client." The fundamental privilege also can apply to preliminary consultations by a prospective client. *Barton v. U.S. Dist. Ct. Cent. Dist., Cal.*, 410 F.3d 1104, 1111-12 (9th Cir. 2005) (construing the attorney-client privilege under California law).

*Palmer* writes:

> The subject matter and author of each exhibit is critical in determining whether the attorney-client privilege prevents its discovery. Absent a voluntary waiver or an exception, the privilege applies to all communications from the client to the attorney and to all advice given to the client by the attorney in the course of the professional relationship. *Kuiper v. Dist. Ct. of the Eighth Judicial Dist.* (1981), 193 Mont. 452, 461, 632 P.2d 694, 699; see also § 26-1-803, MCA.
>
> * * * *
>
> The privilege of non-disclosure is not lost merely because the communications contain relevant nonlegal considerations. *Union Oil Co. of Calif. v. Dist. Ct.* (1972), 160 Mont. 229, 236, 503 P.2d 1008, 1012.
>
> * * * *
>
> [T]he attorney-client privilege belongs to the client and an attorney cannot waive it without the consent of the client. See § 26-1-803, MCA, Rule 503, M.R.Evid.

*Palmer*, 261 Mont. at 108-110, 861 P.2d at 906.

The Court has reviewed all 142 e-mails. In all of them except for the above-listed 35, which shall be discussed below, all the e-mails include Nigel's communications to Carroll asking for legal advice and help, or Carroll's responses. Those 107 e-mails are protected by the broad attorney-client privilege under *Palmer* and other cases cited above. Robin failed her burden to show that Nigel waived the attorney-client privilege with respect to 107 of the e-mails, and the Court finds that Nigel reasonably believed that the 107 e-mails were protected by the privilege.

However, 35 of the e-mails are not protected by the privilege because they contain no request for legal advice or response, or were sent to Cossitt and other parties rather than just between Carroll and Nigel. E-mail 31 contains no communication from Nigel to Carroll, no request for legal advice and no advice given. Nigel simply forwarded Carroll an email exchange between Robin and Kelly Brewer. E-mail 47 contains no legal advice. Carroll simply forwarded without comment objections to Robin's Chapter 13 Plan filed by the Trustee and another.

Several of the e-mails are from Nigel to several persons, including Cossitt, Robin or her other attorney, the Chapter 13 Trustee or others, and responses from persons who are not Carroll. Those e-mails include 50, 58, 71, 91, 94, 95, 106, 107, 112, 113, 114, 125, 126, 128, 129, 130, 131, 132, 133, 134, 135, 136, 141, and 142. The Court finds that Nigel cannot reasonably expect that e-mails sent to Robin, her attorneys, and other persons who are not Carroll or Nigel's attorney, are subject to the attorney-client privilege.

E-mail 57 is from Carroll to Nigel but contains no legal advice or other comment by Carroll or Nigel. The attachment is Robin's Form B22C filed in her Chapter 13 case. E-mail 80 is from Carroll to Nigel without advice or comment, and includes as attachments this Court's

Memorandum of Decision and Order entered June 22, 2011, denying Robin's 2nd motion for partial summary judgment.  E-mail 82 is from Carroll to Nigel including a blank proof of claim form, without advice, comment or response.  E-mail 88 is from Carroll to Nigel including a telephonic pretrial scheduling conference notice issued by the Clerk dated June 2, 2011, without legal advice, comment or response.  E-mail 116 is from Carroll to Nigel including Cossitt's notice of electronic filing of docket no. 230 in Robin's case, without advice, comment or response.  E-mail 119 is from Carroll to Nigel including the notice of commencement of Robin's Chapter 11 case, meeting of creditors and deadlines, without advice, comment or response.  E-mail 121 is from Carroll to Nigel without comment legal advice or response, and includes Robin's 2010 federal tax return Form 1040 and related statements.  The Court finds that none of these e-mails are subject to the attorney-client privilege.  *See Upjohn Co. v. United States*, 449 U.S. 383, 395, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.")

    The final e-mail is E-mail 123, which Nigel sent to Carroll including a long e-mail exchange Nigel had with Robin about their son's wrestling trips and parenting issues.  E-mail 123 does not include Nigel's request for advice, or other communication with Carroll, nor does it include any comment, advice or response by Carroll.  The Court finds that it is not subject to the attorney-client privilege.

    **IT IS ORDERED** a separate Order shall be entered in conformity with the above sustaining Robin's objection in part and overruling it in part, granting Carroll's Motion for protective order in part and denying it in part, and ordering Carroll to provide Cossitt with copies

of e-mails identified on Ex. B as numbers 31, 47, 50, 57, 58, 71, 80, 82, 88, 91, 94, 95, 101, 106, 107, 112, 113, 114, 116, 119, 121, 123, 125, 126, 128, 129, 130, 131, 132, 133, 134, 135, 136, 141 and 142, including attachments. The parties shall be responsible for their own costs and fees in relation to Carroll's Motion.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana